UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
UNITED STATES OF AMERICA, and THE STATE :
OF NEW YORK *ex rel.* PANNA NAHAR, :
                                                                   :
                  Plaintiffs,                                  :
                                                                   :
         - against -                                        :
                                                                   :
SORKIN'S RX LTD. t/a and/or d/b/a CAREMED       :
PHARMACEUTICAL SERVICES,                                           :
                                                                   :
                  Defendant.                                   :
------------------------------------------------------------------ X   12 Civ. 4366 (DLC)
UNITED STATES OF AMERICA,                                          :
                                                                   :
                  Plaintiff-Intervenor,                        :
                                                                   :
         - against -                                        :
                                                                   :
SORKIN'S RX LTD. t/a and/or d/b/a CAREMED       :
PHARMACEUTICAL SERVICES,                                           :
                                                                   :
                  Defendant.                                   :
------------------------------------------------------------------ X

## STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

This Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among the United States of America ("the "United States"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, Defendant Sorkin's Rx Ltd. t/a and/or d/b/a CareMed Pharmaceutical Services ("Sorkin's"), and Panna Nahar ("Relator") (collectively, the "Parties"), through their respective authorized representatives.

WHEREAS, Sorkin's is a New York-based retail specialty pharmacy that primarily sells and distributes high-cost specialty drugs that require special handling and are used to treat conditions that are chronic and/or require complex treatment;

WHEREAS, on or about June 4, 2012, Relator filed a *qui tam* action in the United States District Court for the Southern District of New York, captioned *United States and the State of New York ex rel. Nahar v. Sorkin's Rx Ltd. t/a and/or d/b/a CareMed Pharmaceutical Services*, No. 12 Civ. 4366 (DLC) ("the Relator's Action"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), which alleges that Sorkin's violated the FCA by engaging in a number of fraudulent practices in connection with its sale of prescription drugs to Medicare and Medicaid beneficiaries;

WHEREAS, the United States intervened in the Relator's Action and filed a complaint-in-intervention (the "Federal Complaint") against Sorkin's simultaneously with the filing of this Stipulation alleging that, from January 2009 through December 2012, Sorkin's: (a) made false statements to Medicare Part D plans ("Part D plans") to secure expeditious decisions on prior authorization for the coverage of specialty drugs by, among other things, fabricating Medicare beneficiaries' medical information, including blood test results, and falsely identifying themselves as representatives of the prescribing physician's office; (b) re-stocked and re-sold unused dosages of Rituxan and Procrit, without reversing the previously submitted claims to the Part D plan or Medicaid, or crediting the Part D plan or Medicaid for amounts already paid; and (c) submitted false claims for payment to Part D plans or Medicaid for refills of Rituxan and Procrit that were not actually delivered to and received by beneficiaries (this conduct, as is more fully described in the Federal Complaint, is referred to below as the "Covered Conduct");

WHEREAS, the State of New York (the "State") has filed a Notice of Intervention in the Relator's Action;

WHEREAS, the State, through the Medicaid Fraud Control Unit of the New York State Attorney General's Office, contemporaneously herewith entered into a settlement agreement with Sorkin's to resolve the State's claims relating to the Covered Conduct ("State Settlement");

WHEREAS, in connection with its discussions with the United States, Sorkin's has submitted information concerning the company's assets, liabilities, revenue, and profits ("Financial Information");

WHEREAS, the total amount to be paid in settlement of both the Federal Complaint and the State's claims relating to the Covered Conduct is $10,000,000, to be paid in four installments according to the schedule set forth herein, with the second, third, and fourth payments including interest compounded annually at the rate of 3.25% accruing from the Effective Date of this Stipulation (as defined in Paragraph 29);

WHEREAS, the Relator's share of the settlement will be subject to a separate agreement between the Relator and the United States;

NOW, THEREFORE, in consideration of the mutual promises and obligations of this Stipulation, the Parties agree and covenant as follows:

1.  Sorkin's consents to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over Sorkin's.

2.  Sorkin's admits, acknowledges, and accepts responsibility for the following during the period January 2009 through December 2012:

    a.  Part D plans employ utilization management practices that sometimes require providers to obtain "prior authorization" before covering certain drugs. With respect to several specialty drugs sold by Sorkin's, Part D plans require the submission of clinical information regarding the Medicare beneficiary prior to approving coverage. Part D plans often

require this clinical information to be provided directly by representatives of the prescribing physician's office.

   b. When contacting insurance companies to obtain prior authorization for the coverage of specialty drugs prescribed to Medicare beneficiaries, some representatives of Sorkin's falsely stated that they were calling from the prescribing physician's office. In some instances, Sorkin's representatives responded to questions seeking clinical information based on their understanding of the prior authorization criteria for the particular drug, instead of obtaining the patient's actual clinical information from the prescribing physician and conveying that information.

   c. Sorkin's failed to adequately oversee and train staff responsible for the prior authorization process.

   d. Sorkin's had inadequate procedures and auditing processes in place to ensure that some claims submitted to certain third-party payors for Rituxan and Procrit, including claims for payment to Part D plans and Medicaid, were reversed when necessary or credited to the Part D plan or Medicaid, after Procrit and Rituxan were returned to the pharmacy and restocked or not delivered to and/or received by the beneficiary.

   3. Sorkin's agrees to pay to the United States a total of $9,534,577 ("U.S. Settlement Amount") to be paid in four installments according to the schedule set forth below, with the second, third, and fourth payments including interest compounded annually at the rate of 3.25% from the Effective Date. Sorkin's shall make the below-referenced payments pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of New York.

          a.      Within 20 days of the Effective Date, Sorkin's shall make an initial payment of $2,534,577.

          b.      On or before December 31, 2014, Sorkin's shall make a second payment of $2,000,000, plus interest on the amount of the U.S. Settlement Amount that was not paid within 20 days of the Effective Date, compounded annually at the rate of 3.25% and accruing from the Effective Date.

          c.      On or before June 20, 2015, Sorkin's shall make a third payment of $2,000,000, plus interest on the amount of the U.S. Settlement Amount that was not paid by December 31, 2014, compounded annually at the rate of 3.25% and accruing from the Effective Date.

    4.      On or before December 31, 2015, Sorkin's shall make a fourth and final payment of $3,000,000, plus interest on the amount of the U.S. Settlement Amount that was not paid by June 20, 2015, compounded annually at the rate of 3.25% and accruing from the Effective Date. Subject to the exceptions in Paragraph 5 (concerning excluded claims), and conditioned upon timely payments from Sorkin's of the full U.S. Settlement Amount pursuant to Paragraph 3, the United States shall dismiss with prejudice the Federal Complaint and release Sorkin's and all of its current and former officers, directors, trustees, employees, affiliates, and assigns, from any civil or administrative monetary claim the United States has under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, or the common law theories of payment by mistake, unjust enrichment, and fraud for the Covered Conduct.

5. Notwithstanding the releases given in Paragraph 4 or any other Paragraph of this Stipulation, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Stipulation, any administrative liability, including mandatory exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

    e. Any liability based upon obligations created by this Stipulation.

6. Sorkin's fully and finally releases the United States, and its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Sorkin's has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

7. In consideration of (i) execution of this Stipulation by Relator, and (ii) the Relator's releases as set forth in Paragraph 8, Sorkin's and all of its current and former officers, directors, employees, assigns, attorneys, and agents, on behalf of themselves and their heirs, attorneys, agents, successors, and assigns, release Relator, her heirs, attorneys, agents, and assigns, from any and all claims for any action, event, or conduct relating to the Relator's allegations in the Relator's Action.

8.      Conditioned upon timely payments from Sorkin's of the full U.S. Settlement Amount pursuant to Paragraph 3, Relator, for herself and her heirs, successors, attorneys, agents, and assigns, fully and finally releases Sorkin's from any civil monetary claim Relator has on behalf of the United States relating to Relator's allegations in the Relator's Action; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover her reasonable expenses and attorneys' fees and costs from Sorkin's pursuant to 31 U.S.C. § 3730(d) or be deemed to have released her claims under 31 U.S.C. § 3730(d) for such reasonable expenses and attorneys' fees and costs. Nothing in this Stipulation shall preclude any right Sorkin's may have to object to the amount of expenses and attorneys' fees and costs the Relator seeks to recover.

9.      Relator shall not object to this Stipulation but agrees and confirms, pursuant to 31 U.S.C. § 3730(c)(2)(B), that this Stipulation is fair, adequate, and reasonable under all the circumstances.

10.     Sorkin's has provided Financial Information to the United States and the United States has relied on the accuracy and completeness of that Financial Information in reaching this Stipulation. Sorkin's warrants that the Financial Information is complete and accurate. If the United States learns of any misrepresentation or inaccuracy in the Financial Information, or of assets in which Sorkin's had an interest at the time of this Stipulation that were not disclosed in the Financial Information, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Information by $250,000 or more, the United States may at its option: (i) rescind this Stipulation and reinstate its suit based on the Covered Conduct, or (ii) let the Stipulation stand and collect the full U.S. Settlement Amount plus one hundred percent (100%) of the value of the net worth of Sorkin's that was previously not disclosed. Sorkin's

agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorneys' fees and expenses.

11.     In the event that the United States opts to rescind this Stipulation pursuant to Paragraph 10, Sorkin's agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (i) are filed by the United States within 60 calendar days of written notification to Sorkin's that this Stipulation has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date.

12.     Sorkin's waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Stipulation constitutes an agreement by the United States concerning the characterization of the U.S. Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

13.     The U.S. Settlement Amount shall not be decreased as a result of the denial or retention of claims for payment now being withheld from payment by any Medicare contractor (*e.g.,* Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payor, related to the Covered Conduct; and Sorkin's agrees not to resubmit to any Medicare contractor or any state payor any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

14. Sorkin's shall be in default of this Stipulation if it fails to make any of the four payments set forth in Paragraph 3, in whole or in part, on or before the due date for such payment. The United States will provide written notice of any default, to be sent by e-mail and first-class mail to counsel for Sorkin's identified in Paragraph 28. In the event of default, the entire remaining unpaid balance of the U.S. Settlement Amount shall be immediately due and payable by Sorkin's, and interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance, beginning seven (7) business days after delivery of the notice of default. If the U.S. Settlement Amount, with all accrued interest, is not paid in full within seven (7) business days following delivery of the notice of default, Sorkin's shall agree to entry of a Consent Judgment in favor of the United States against Sorkin's in the amount of the unpaid balance, and the United States, at its option, may (a) rescind this Stipulation; (b) seek specific performance of the Stipulation; (c) offset the remaining unpaid balance from any amounts due and owing Sorkin's at the time of default by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Sorkin's shall not contest any offset imposed or any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, Sorkin's shall pay the United States all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation, Sorkin's shall not plead, argue, or otherwise raise any defense under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

15. Sorkin's agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Sorkin's, its present or former officers, directors, trustees, employees, shareholders, and agents in connection with:

(1) the matters covered by this Stipulation;

(2) the United States' investigation(s) of the matters covered by this Stipulation;

(3) the investigation, defense, and corrective actions undertaken by Sorkin's in response to the United States' investigation(s) in connection with the matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation; and

(5) the payment Sorkin's makes to the United States pursuant to this Stipulation and any payments that Sorkin's may make to Relator, including for her costs and attorneys' fees,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Sorkin's, and Sorkin's shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs

through any cost report, cost statement, information statement, or payment request submitted by Sorkin's or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c. Treatment of Unallowable Costs Previously Submitted for Payment: Sorkin's further agrees that within 90 days of the Effective Date it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Sorkin's or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Sorkin's agrees that the United States, at a minimum, shall be entitled to recoup from Sorkin's any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Sorkin's or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Sorkin's or any of its subsidiaries' or affiliates' cost reports, cost statements, or information reports.

    d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the books and records of Sorkin's to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

   16. If within 91 days of the Effective Date or of any payment made under this Stipulation, Sorkin's commences any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of the debts of Sorkin's, or seeking to adjudicate Sorkin's as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Sorkin's or for all or any substantial part of its assets, Sorkin's agrees as follows:

    a. The obligations of Sorkin's under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Sorkin's shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) the obligations of Sorkin's under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Sorkin's was insolvent at the time this Stipulation was entered into, or became insolvent as a result of the payments made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Sorkin's.

    b. If the obligations of Sorkin's under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Sorkin's for the claims that would otherwise be covered by the releases provided in Paragraph 4 above. Sorkin's agrees that (i) any such claims, actions, or proceedings brought by the United

States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Sorkin's shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Sorkin's shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 60 calendar days of written notification to Sorkin's that the releases have been rescinded pursuant to this Paragraph; and (iii) the United States has a valid claim against Sorkin's in the amount of $9,492,265, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c. Sorkin's acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

17. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as provided in Paragraph 18 below.

18. Sorkin's agrees that it waives and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this

Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover her reasonable expenses and attorneys' fees and costs from Sorkin's pursuant to 31 U.S.C. § 3730(d), or be deemed to have released her claims under 31 U.S.C. § 3730(d) for such reasonable expenses and attorneys' fees and costs, as provided in Paragraph 8.

21. Each Party and signatory to this Stipulation represents that it freely and voluntarily enters into this Stipulation without any degree of duress or compulsion.

22. This Stipulation constitutes the complete agreement between the Parties. This Stipulation may not be amended except by written consent of the Parties.

23. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

24. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

25. This Stipulation is binding on the successors, transferees, heirs, and assigns of Sorkin's.

26. This Stipulation is binding on Relator's successors, transferees, heirs, and assigns.

27. Any failure by the United States to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and

the United States, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

28.  Any notices pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, or email followed by postage prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Jeffrey K. Powell
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2706
Email: Jeffrey.Powell@usdoj.gov

TO SORKIN'S:

Harold Ruvoldt, Esq.
Sullivan Ruvoldt, PLLC
1700 Broadway, 28th Floor
New York, NY 10019
Telephone: (212) 706-1851
Email: Hruvoldt@sullivanruvoldt.com

Joseph P. Goldberg
Hodgson Russ LLP
1540 Broadway, 24th Floor
New York, NY 10036
Telephone: (646) 218-7615
Email: Jgoldberg@hodgsonruss.com

TO RELATOR:

David J. Caputo, Esq.
Kline & Specter
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Email: David.Caputo@klinespecter.com

Joseph Trautwein, Esq.
Joseph Trautwein & Associates, LLC
17 Auchy Road
Erdenheim, PA 19038
Telephone: (215) 764-2301
Email: Jtrautwein@cpmiteam.com

29.     The effective date of this Stipulation is the date upon which this Stipulation is entered by the Court (the "Effective Date").

So ordered.

*[signature]*
October 9, 2014

*For the United States*:

Dated:   October 8, 2014

    PREET BHARARA
    United States Attorney

By: _/s/ Jeffrey Powell_
    JEFFREY. K. POWELL
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, New York 10007


*For the Relator*:

Dated:   October__, 2014

    KLINE & SPECTER

By: _____
    DAVID J. CAPUTO, ESQ.
    1525 Locust Street, 19th Floor
    Philadelphia, PA 19102


    JOSEPH TRAUTWEIN &
    ASSOCIATES, LLC

By: _____
    JOSEPH TRAUTWEIN, ESQ.*
    17 Auchy Road
    Erdenheim, PA 19038
    *   Not Admitted in New York



_____
    PANNA NAHAR


*For Sorkin's*:

Dated:   October __, 2014

    SULLIVAN RUVOLDT, PLLC

By: _/s/_
    HAROLD RUVOLDT, ESQ.
    1700 Broadway, 28th Floor
    New York, NY 10019


    HODGSON RUSS LLP

By: _/s/_
    JOSEPH P. GOLDBERG, ESQ.
    1540 Broadway, 24th Floor
    New York, NY 10036


    SORKIN'S RX LTD.


By: _/s/ Nuaman Tyyeb_
    NUAMAN TYYEB
    President, Sorkin's RX Ltd.
    As the executor of the estate of
    Muhammad Tyyeb

<u>*For the United States*</u>:

Dated: October __, 2014

    PREET BHARARA
    United States Attorney

By: _____
    JEFFREY K. POWELL
    Assistant United States Attorney
    86 Chambers Street, 3rd Floor
    New York, New York 10007

<u>*For the Relator*</u>:

Dated: October 6, 2014

    KLINE & SPECTER

By: _/s/_____
    DAVID J. CAPUTO, ESQ.
    1525 Locust Street, 19th Floor
    Philadelphia, PA 19102

    JOSEPH TRAUTWEIN &
    ASSOCIATES, LLC

By: _/s/_____
    JOSEPH TRAUTWEIN, ESQ.*
    17 Auchy Road
    Erdenheim, PA 19038
    * Not Admitted in New York

_/s/ Panna Nahar_
PANNA NAHAR

<u>*For Sorkin's*</u>:

Dated: October __, 2014

    SULLIVAN RUVOLDT, PLLC

By: _____
    HAROLD RUVOLDT, ESQ.
    1700 Broadway, 28th Floor
    New York, NY 10019

    HODGSON RUSS LLP

By: _____
    JOSEPH P. GOLDBERG, ESQ.
    1540 Broadway, 24th Floor
    New York, NY 10036

    SORKIN'S RX LTD.

By: _____
    NUAMAN TYYEB
    President, Sorkin's RX Ltd.
    As the executor of the estate of
    Muhammad Tyyeb

17

SO ORDERED:

_____
HON. DENISE COTE
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
　　　　_____, 2014