UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF NEW YORK *ex rel.* PANNA NAHAR, | ) ) ) ) | **STIPULATION AND ORDER OF SETTLEMENT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SORKIN'S RX LTD., t/a and/or d/b/a CAREMED PHARMACEUTICAL SERVICES, | ) ) ) | Civil Action No. 12-CV-4366 (DLC) |
| Defendant. | ) ) ) | |

IT IS HEREBY STIPULATED AND ORDERED THAT the plaintiffs' claims against defendant in the above-referenced action are settled in accordance with the following terms and conditions:

## I.    PARTIES

This Settlement Agreement ("Agreement") is entered into between and among the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"), Defendant Sorkin's Rx Ltd. t/a and/or d/b/a CareMed Pharmaceutical Services ("Sorkin's") and Relator Panna Nahar (the "Relator" or "Nahar") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## II.    PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.  Sorkin's, a private limited company organized under the laws of the State of New York is a New York-based retail specialty pharmacy that primarily sells and distributes high-cost specialty drugs that require special handling and are used to treat conditions that are chronic

and/or require complex treatment to Medicaid recipients in New York under MMIS number 01750949, with its principal place of business located at 1981 Marcus Avenue, Lake Success, New York 11042.

B.  On or about June 4, 2012, Relator Panna Nahar filed a complaint under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C.  §§ 3730 (b) – (h) and the New York False Claims Act, N.Y. State Fin. Law § 190(2), captioned United States of America, and The State of New York *ex rel*. Panna Nahar v. Sorkin's Rx Ltd., t/a and/or d/b/a CareMed Pharmaceutical Services, in the United States District Court for the Southern District of New York (Civil Action No. 12-4366) (Cote, D.) (the "Nahar Action").

C.  On October 8, 2014, the State of New York filed its Notice of Election to Intervene and Convert the Nahar Action.

D.  On October 8, 2014, the United States filed its Notice of Election to Intervene in the Nahar Action along with a Complaint-in-Intervention (the "Federal Complaint").

E.  Sorkin's submitted and caused to be submitted Medical Assistance Program ("Medicaid") claims for pharmaceutical services ("Medicaid Claims") to fiscal agents of the State of New York pursuant to the Social Services Law and the Public Health Law of the State of New York during the period from January 1, 2009 through December 31, 2012 ("Claims Period").

F.  The aforesaid Medicaid Claims were relied upon by the State to pay Sorkin's during the Claims Period.

G.  The State contends that it has certain civil claims against Sorkin's under the New York False Claims Act, N.Y. State Fin. Law §§ 189 et seq., other New York statutes and the common law, as specified in paragraph 12 below, for engaging in the following conduct:

> During the claims period, Sorkin's made false statements to Medicaid to secure expeditious decisions on prior authorization for the coverage of specialty drugs by,

2

among other things, falsely identifying themselves as representatives of the prescribing physician's office; restocked and resold unused dosages of Rituxan and Procrit without reversing the previously submitted claims to Medicaid or the Medicare Part D plans or crediting Medicaid or the Medicare Part D plan for amounts already paid; and submitted false claims for payment to Medicaid or Medicare Part D plans for refills of Rituxan and Procrit that were not actually delivered to and received by the recipients ("Covered Conduct").

H. The New York State Office of the Medicaid Inspector General ("OMIG") will consider entering into a Corporate Integrity Agreement ("CIA") with Sorkin's in the event that Sorkin's does not enter into a CIA with the Office of the Inspector General ("OIG").

I. In the event that Sorkin's does not enter into a CIA with the OIG, if OMIG determines in its sole discretion, that a CIA is necessary to ensure that the provider has an effective and sustainable compliance program or is in compliance with the official rules and regulations of the department, then Sorkin's will agree to enter into a CIA with OMIG.

J. Sorkin's is contemporaneously entering into an agreement with the United States to resolve the United States' claims arising from the Covered Conduct as delineated in the Federal Complaint (the "United States Agreement").

K. Relator Panna Nahar claims entitlement under § 190 (6)(a) to an amount for reasonable expenses that the court finds to have been necessarily incurred by Relator, reasonable expenses, attorneys' fees and costs, but she and Sorkin's have not agreed on the Relator's entitlement to, or the amount of those expenses, fees and costs, if any.

L. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement of the States' claims against the defendant, pursuant to the Terms and Conditions set forth below.

### III.    TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

1. Sorkin's consents to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over Sorkin's.

2. Sorkin's admits, acknowledges and accepts responsibility for the following during the Claims Period:

    a. When contacting insurance companies to obtain prior authorization for the coverage of specialty drugs prescribed to Medicaid recipients, some representatives of Sorkin's falsely stated they were calling from the prescribing physician's office.  In some instances, Sorkin's representatives responded to questions seeking clinical information based on their understanding of the prior authorization criteria for the particular drug, instead of obtaining the patient's actual clinical information from the prescribing physician and conveying that information.

    b. Sorkin's failed to adequately oversee and train staff responsible for the prior authorization process.

    c. Sorkin's had inadequate procedures and auditing processes in place to ensure that some claims submitted to certain third-party payors for Rituxan and Procrit, including claims for payment to Medicaid and Medicare Part D plans, were reversed when necessary or credited to Medicaid or the Medicare Part D plan, after Procrit and Rituxan were returned to the pharmacy and restocked or not delivered to and/or received by the recipient.

3. Sorkin's agrees to pay the United States and the State a total of Eight Hundred Forty Six

Thousand Two Hundred Twenty Four dollars ($846,224) in settlement of the damages to the New York State Medicaid Program (referred herein as the "Total Medicaid Settlement Amount").

4.  From this amount, Sorkin's shall pay to the State the sum of Four Hundred Sixty Five Thousand Four Hundred Twenty Three dollars ($465,423) (the "New York State Medicaid Settlement Amount"). No later than twenty (20) days after the Effective Date of this Agreement as defined in Paragraph 40 below, Sorkin's shall pay the New York State Medicaid Settlement Amount in full by a cashier's check made payable to the "MFCU Restitution Fund".

5.  In the event that Sorkin's fails to pay any or all of the New York State Medicaid Settlement Amount when due, as set forth in Paragraph 4 above, Sorkin's hereby agrees not to offer or accept an offer to sell all or any part of its business operations without giving thirty (30) days prior notice to the Attorney General, who, in his sole discretion, may require a security mechanism to ensure payments due under this Agreement. Should all or any portion of Sorkin's business be sold on or before full payment to the State of the New York State Medicaid Settlement Amount pursuant to Paragraph 4 above, payment of the New York State Medicaid Settlement Amount shall be accelerated and shall be paid upon closing of such sale. Further, no current or former officer, director, employee, member, manager or shareholder of Sorkin's may accept or receive any remuneration or consideration relating to any such sale, including, but not limited to, any portion of the proceeds of such sale, directly or indirectly, until the New York State Medicaid Settlement Amount is paid in full to the State.

6.  In the event that Sorkin's fails to pay any or all of the New York State Medicaid Settlement Amount when due, as set forth in Paragraphs 4 and 5 above, the State will provide written notice of the default to be sent by first-class mail to the undersigned attorney for

Sorkin's.  In the event of default, the New York State Medicaid Settlement Amount shall be immediately due and payable, and interest shall accrue at the rate of 9% per annum compounded daily on the remaining unpaid principal balance, beginning seven (7) business days after delivery of the notice of default.  If the New York State Medicaid Settlement Amount, with all accrued interest, is not paid in full within seven (7) business days after delivery of the notice of default, the State, at its option, may:

    a.  Rescind this Agreement and reinstate the Complaint;

    b.  Seek specific performance of the Agreement; or

    c.  Exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.

7.  In the event that the State seeks remedies for collection or enforcement of Sorkin's obligations hereunder, and the State substantially prevails in its collection or enforcement action, Sorkin's shall be responsible for all costs and expenses incurred by the State in connection with that action.

8.  In the event the State opts to rescind this Agreement pursuant to Paragraph 6.a, Sorkin's expressly agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defense was available on June 4, 2012.

9.  In the event the State reinstates an action concerning the Covered Conduct, Sorkin's further waives and will not assert any defenses it may have to any action relating to the Covered Conduct to the extent that such defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or

under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Agreement bars a remedy sought in such action.

**RELEASES**

10. Subject to exceptions in Paragraph 12 below (concerning excluded claims), in consideration of the obligations of Sorkin's set forth in this Stipulation and Order of Settlement, conditioned upon payment in full by Sorkin's of the New York State Medicaid Settlement Amount, and subject to Paragraph 26 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Stipulation and Order of Settlement), the State agrees to release Sorkin's and its officers, agents and employees during the time period of the Covered Conduct from any civil or administrative monetary claim arising from the Covered Conduct that the State has or may have against Sorkin's under the New York False Claims Act, N.Y. State Fin. Law §§ 189 et seq., Executive Law § 63(12), Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, disgorgement, unjust enrichment, breach of contract and fraud.

11. Subject to the exceptions in Paragraph 12 below (concerning excluded claims), in consideration of the obligations of Sorkin's set forth in this Stipulation and Order of Settlement, conditioned upon payment in full by Sorkin's of the New York State Medicaid Settlement Amount, Relator, on behalf of herself, her heirs, successors, attorneys, agents and assigns, fully and finally releases, waives and forever discharges Sorkin's and its officers, agents and employees from any claims or allegations Relator has asserted or could have asserted, arising from the Covered Conduct against Sorkin's under the New York False Claims Act, N.Y. State Fin Law §§ 189 *et seq.*, provided, however, that Nahar's release does not release Sorkin's for any

claims for attorneys' fees, expenses and costs under the New York False Claims Act, N.Y. State Fin. Law §190 (6)(a).

12. Notwithstanding any term of this Agreement, including the releases provided in Paragraphs 10 and 11 above, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person are the following claims of the State:

    a.  Any civil, criminal or administrative liability arising under New York Tax Law;

    b.  Any civil liability that Sorkin's has or may have under any state statute, regulation or rule not covered by this Agreement;

    c.  Any criminal liability;

    d.  Any administrative liability, including mandatory or permissive exclusion from the Medicaid program;

    e.  Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

    f.  Any liability which may be asserted, directly or indirectly, by private payors or insurers, including those that are paid by the State of New York Medicaid Program on a fully capitated basis; and

    g.  Any liability based on obligations created by this Agreement.

13. Sorkin's fully and finally releases the State, its agencies, current and former employees, servants, and agents from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Sorkin's has asserted, could have asserted, or may assert in the future against the State, its agencies, current and former employees, servants, and agents related to the matters covered by the Nahar Action, the State's investigation and any prosecution thereof, and this Agreement.

14. In consideration of the obligations of the Relator set forth in this Agreement, Sorkin's on behalf of itself, and its officers, agents and employees fully and finally releases, waives and forever discharges Relator and her respective heirs, successors, attorneys, agents, and assigns from any claims that Sorkin's has asserted, could have asserted, or may assert in the future against Nahar and her heirs, successors, attorneys, agents, and assigns related to the Nahar Action and Nahar's investigation and prosecution thereof.

15. Nahar and her heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to N.Y. State Fin. Law § 190(5)(b)(ii) and, Nahar, for herself and for her heirs, successors, attorneys, agents, and assigns, fully and finally releases, waives, and forever discharges the State, its officers, agents, and employees, from any claims arising from or relating to N.Y. State Fin. Law § 190, from any claims arising from the filing of the Nahar Action, from any other claims for a share of the New York State Medicaid Settlement Amount, and in full settlement of any claims Nahar may have against the State under this Agreement. This Agreement does not resolve nor in any manner affect any claims that the State has or may have against Nahar arising under the State's tax laws and as otherwise specified in Paragraph 12, or any claims arising under this Agreement.

**PAYMENT TO RELATOR**

16. Contingent upon the State receiving the New York State Medicaid Settlement Amount as set forth in Paragraph 4 above, within thirty (30) days after the State's receipt of such payment, the State agrees to pay Relator a sum of money equal to 18.5 percent of such payment.  The State's obligation to pay Relator pursuant to this paragraph is conditioned upon the State's actual

receipt of the payment due from Sorkin's as set forth in Paragraph 4.  Such payment shall be made by check made payable to Panna Nahar and Kline & Specter, P.C.

17. Under no circumstances shall the State have any liability to Relator or Relator's attorneys except as set forth in Paragraph 16 above.  The State in no way promises or guarantees Relator, nor is liable to Relator for, the collection or payment of any funds pursuant to this Agreement or the payment of any relator's share except as provided herein for funds actually collected and received by the State.  Under no circumstances shall the State be required to exercise any authority under this Agreement or any other power or authority for the benefit of Relator.

18. Sorkin's and Relator shall resolve by separate agreement payment to Relator for expenses, attorneys' fees and costs.

## CORPORATE INTEGRITY AGREEMENT

19. In the event that Sorkin's does not enter into a CIA with the OIG, if OMIG determines, in its sole discretion, that a CIA is necessary to ensure that Sorkin's has an effective and sustainable compliance program or is in compliance with the official rules and regulations of the department, then Sorkin's will enter into a CIA with OMIG as a contingency of this Agreement.  Sorkin's shall be in Default of this Agreement if Sorkin's fails to enter into a CIA upon OMIG's determination that a CIA is necessary.

## OTHER PROVISIONS

20. Sorkin's agrees that this Agreement is not punitive in purpose or effect.

21. Sorkin's agrees that all costs incurred by or on behalf of itself and any associated person or entity in connection with (1) the investigation conducted by MFCU; (2) Sorkin's investigation and defense of this matter (including attorneys' fees and expenses); (3) the negotiation and performance of this Agreement; (4) the payment pursuant to this Agreement; (5) preparing and

submitting any reports required under this Agreement; and (6) the negotiation of, and obligations undertaken pursuant to any CIA with OMIG, are unallowable costs on government contracts and under the Medicaid Program.  Sorkin's will not charge such unallowable costs directly or indirectly to the Medicaid Program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by any Medicaid Provider to the Medicaid Program.  Sorkin's further agrees that within ninety (90) days of the entry of this Agreement, it will identify to Medicaid fiscal agents any unallowable costs included in payments previously sought from the New York State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statement, information reports, or payment requests already submitted by Sorkin's, and will request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of that unallowable costs.  Sorkin's agrees that the State, at a minimum, will be entitled to recoup from Sorkin's any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, cost statements, information reports, or payment requests.

22. This Agreement is intended to be for the benefit of the Parties to this Agreement only, and by this instrument the Parties to this Agreement do not release any claims against any other person or entity, except as expressly provided by this Agreement.

23. Sorkin's agrees that it will waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

24. Sorkin's shall maintain custody of, or make arrangements to have maintained, all

documents and records related to the Covered Conduct for a period of six years after completion of the payment of the New York State Medicaid Settlement Amount or the period required by 18 N.Y.C.R.R. § 504.3 and any applicable provider manual, whichever is later.

25. Sorkin's expressly warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C §§ 547(b)(3), and that it currently believes it will remain solvent following its payment to the United States of the U.S. Settlement Amount, due under the settlement agreement that Sorkin's is entering into with the United States regarding this action, and to the State of the New York State Medicaid Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Sorkin's within the meaning of 11 U.S.C. § 547(c) (1), and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Sorkin's was or became indebted to on after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a) (1).

26. If within ninety-one (91) days of the Effective Date of this Agreement or of any payment made under this Agreement, Sorkin's commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Sorkin's debts, or seeking to adjudicate Sorkin's as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee,

custodian, or other similar official for Sorkin's or for all or any substantial part of Sorkin's assets, Sorkin's agrees as follows:

    a. Sorkin's shall provide the MFCU Special Deputy Attorney General immediate notice by hand delivery, express courier followed by postage prepaid mail at the address contained in paragraph 44 herein.

    b. Payment of the New York State Medicaid Settlement Amount shall be accelerated and the full amount deemed due and owing.

    c. Sorkin's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Sorkin's shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Sorkin's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Sorkin's was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or the State; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Sorkin's.

    d. If any of Sorkin's' obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Sorkin's for the claims that would otherwise be covered by the releases provided in Paragraphs 10 and 11, above. Sorkin's agrees that (i) any such claims, actions, or proceedings brought by the State are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or

proceedings described in the first clause of this paragraph, and Sorkin's shall not argue or otherwise contend that the State's claims, actions, or proceedings are subject to an automatic stay; (ii) Sorkin's shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppels, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the State within sixty (60) calendar days of written notification to Sorkin's that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on June 4, 2012, and (iii) the State has a valid claim against Sorkin's in the amount no less than One Million Three Hundred Ninety Six Thousand Two Hundred Sixty Nine dollars ($1,396,269) plus civil penalties to be determined by the Court, and the State may pursue its claim in the case, action or proceeding referenced in the first clause of this paragraph, as well as any other case, action or proceeding.

    e.  Sorkin's acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

27. Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

28. This Agreement is governed by the laws of the New York State without regard to choice of law or conflict of laws principles. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement, including any dispute regarding Sorkin's' payment of Nahar's attorneys' fees, expenses, and costs, will be the United States District Court for the Southern District of New York. The State does not waive

any objection it may have that a claim against Sorkin's for payment by the State is properly vested in the New York State Court of Claims.

29. Any failure by the State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

30. If any part of this Agreement shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction other than payment of the Total Medicaid Settlement Amount or the New York State Medicaid Settlement Amount, such invalidity or unenforceability shall not affect the remainder of this Agreement, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

31. The terms of this Agreement shall remain effective notwithstanding the death or incapacity of any person, or any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea or sentencing of any person, including but not limited, to the reversal, modification, or dismissal of all or any portion of such charge, conviction, plea or sentence, or the charging, conviction, plea or sentencing of any other person.

32. This Agreement constitutes the complete agreement between the Parties with respect to the Covered Conduct only.  This Agreement may not be amended, changed, modified or waived except in writing signed by the Party or Parties affected by said amendment, change or modification.

33. Sorkin's acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and upon due deliberation with the advice of counsel.

34. Nahar acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever, and that the Relator has entered into this Agreement upon due deliberation with the advice of counsel.

35. The undersigned individuals signing this Agreement on behalf of Sorkin's and Nahar represent and warrant that they are authorized, respectively, by Sorkin's and Nahar to execute this Agreement. The undersigned Special Assistant Attorney General represents that she is signing this Agreement in her official capacity and that she is authorized to execute this Agreement.

36. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

37. This Agreement is binding on Sorkin's successors, transferees, heirs and assigns.

38. This Agreement is binding on Nahar's successors, transferees, heirs and assigns.

39. The captions in this Agreement are provided for reference only and are not operative terms of this Agreement.

40. This Agreement is effective on the date that it is approved by the Court and entered into the Court's docket through an electronic filing notice recorded on ECF ("Effective Date of this Agreement").

41. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

42. Sorkin's agrees not to take any action or to make or permit to be made any public

statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis. Nothing in this paragraph affects Sorkin's: (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party.

43. Within thirty (30) days after receipt of the payment described in Paragraph 4 above, the State and Nahar shall file a Joint Notice of Dismissal with Prejudice of the Nahar Complaint pursuant to Fed. R. Civ. P. 41(a).

44. Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier, followed by postage prepaid mail, and shall be addressed as follows:

**IF TO THE ATTORNEY GENERAL and the STATE:**

New York State Attorney General
Medicaid Fraud Control Unit
Attn: Special Deputy Attorney General, Civil Enforcement Division
120 Broadway
New York, New York 10271


**IF TO SORKIN'S:**

Harold Ruvoldt, Esq.
Sullivan Ruvoldt, PLLC
1700 Broadway, 28th Floor
New York, NY 10019
Telephone:  (212) 706-1851


Joseph P. Goldberg, Esq.
Hodgson Russ LLP
1540 Broadway, 24th Floor
New York, NY 10036
Telephone: (212) 218-7615

*So ordered.*

*Denise Cote*

*October 9, 2014*

17

**IF TO RELATOR:**

David J. Caputo, Esq.
Kline & Specter
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000

Joseph Trautwein, Esq.
Joseph Trautwein & Associates, LLC
17 Auchy Road
Erdenheim, PA 19038
Telephone: (215) 764-2301

**THE STATE OF NEW YORK**

Dated:     October 7, 2014

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York

By:

Jill D. Brenner
Special Assistant Attorney General
Medicaid Fraud Control Unit
120 Broadway, 12th Floor
New York, NY 10271

**DEFENDANT SORKIN'S RX LTD.**

Dated:    October ___, 2014

                                         SORKIN'S RX LTD.

                                         By: _____

                                         Nuaman Tyyeb
                                         President, Sorkin's Rx Ltd.
                                         As the executor of the estate of
                                         Muhammad Tyyeb

Subscribed and sworn to before me this

6th day of October _____, 2014.

_____
Notary Public

My commission expires: _Sept. 30, 2014_

Dated:    October 6, 2014
          **FRED CRUZ**
      **Notary Public, State of New York**
        **Req. No. 01CR4707854**
       **Qualified in Orange County**
    **Commission Expires Sept. 30 2017**

                                   SULLIVAN RUVOLDT, PLLC

                                   By: _____
                                         Harold Ruvoldt, Esq.
                                         Counsel for Defendant
                                         1700 Broadway, 28th Floor
                                         New York, NY 10019

Dated:    October 0, 2014

                                   HODGSON RUSS LLP

                                   By: _____
                                         Joseph P. Goldberg, Esq.
                                         Counsel for Defendant
                                         1540 Broadway, 24th Floor
                                         New York, NY 10036

From:                                                                    10/07/2014 15:48    #233 P.002/002

## RELATOR PANNA NAHAR

Dated:     October 6th, 2014

                                          By: _____
                                               Panna Nahar
                                               Relator

Subscribed and sworn to before me this
6th day of OCTOBER , 2014.

_____
Notary Public

                                          ┌─────────────────────────────────┐
                                          │        VETA I. BROME             │
                                          │  NOTARY PUBLIC, STATE OF NEW YORK│
                                          │        NO. 41-4894800            │
                                          │   QUALIFIED IN QUEENS COUNTY     │
                                          │  COMM. EXPIRES NOV 23, 2017      │
                                          └─────────────────────────────────┘

My commission expires: 11/23/2017

Dated:     October 6th, 2014

                                          KLINE & SPECTER

                                          By: _____
                                               David J. Caputo, Esq.
                                               Counsel for Relator
                                               1525 Locust Street, 19th Floor
                                               Philadelphia, PA 19102

Dated:     October ____, 2014

                                          JOSEPH TRAUTWEIN &
                                          ASSOCIATES, LLC

                                          By: _____
                                               Joseph Trautwein, Esq.*
                                               Counsel for Relator
                                               17 Auchy Road
                                               Erdenheim, PA 19038
                                               *Not Admitted in New York

SO ORDERED
On this ____ day of _____, 2014

_____
HONORABLE DENISE COTE
United States District Judge

21

**RELATOR PANNA NAHAR**

Dated:     October ___, 2014

By:     _____
        Panna Nahar
        Relator

Subscribed and sworn to before me this
_____ day of _____, 2014.

_____
Notary Public

My commission expires: _____

Dated:     October ___, 2014

                              KLINE & SPECTER

By:     _____
        David J. Caputo, Esq.
        Counsel for Relator
        1525 Locust Street, 19th Floor
        Philadelphia, PA 19102

Dated:     October 6, 2014

                              JOSEPH TRAUTWEIN &
                              ASSOCIATES, LLC

By:     _____
        Joseph Trautwein, Esq.*
        Counsel for Relator
        17 Auchy Road
        Erdenheim, PA 19038
        *Not Admitted in New York

**SO ORDERED**
On this _____ day of _____, 2014

_____
HONORABLE DENISE COTE
United States District Judge

21